UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| M- H- J-, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 2:25-cv-00658-JPH-MJD |
| ) | |
| BRANDON CROWLEY, ) | |
| CHARLES MILLER, ) | |
| KRISTI NOEM, ) | |
| PAMELA BONDI, ) | |
| ) | |
| Respondents. ) | |

**ORDER GRANTING PETITION FOR HABEAS CORPUS
AND DIRECTING FURTHER PROCEEDINGS**

Petitioner M- H- J- ("Petitioner") is detained at the Clay County Jail in Brazil, Indiana, under the authority of U.S. Immigration and Customs Enforcement ("ICE"). He filed this writ of habeas corpus petition under 28 U.S.C. § 2241 seeking immediate release, dkt. 4, arguing that his continued detention without an individualized bond hearing violates the laws and Constitution of the United States, dkt. 14. For the reasons explained below, the Court **grants** the petition to the extent that **no later than 5:00 p.m. on January 15, 2026, Respondents must either**: (1) afford Petitioner an individualized bond hearing before an Immigration Judge pursuant to 8 U.S.C. § 1226(a); or (2) release him from custody, under reasonable conditions of supervision.

1

## I. Background

Petitioner is a citizen of Afghanistan who is a minority Shia Muslim and belongs to the Hazara ethnic group. Dkt. 4 at 2. In Afghanistan, he was unlawfully imprisoned and abused by the Taliban. *Id.* He entered the U.S. on July 2, 2024, *id.*, and was granted humanitarian parole though July 1, 2025. *See* dkt. 4-2.

On July 3, 2024, a Customs and Border Patrol official served Petitioner with a Notice to Appear. Dkt. 12-1 at 8-11. The Notice charges Petitioner with inadmissibility under § 212(a)(7)(A)(i) of the INA (8 U.S.C. § 1182(a)(7)(A)(i)) as "an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act. . ." *Id.* at 11. The "arriving alien" checkbox is marked. *Id.* at 8.

On December 8, 2025, federal agents stopped Petitioner as he was driving and told him that he did not have lawful status to be in the United States and that they were taking him to an interview to renew his paperwork in Indianapolis. *Id.* at 3. The agents handcuffed Petitioner and placed him under arrest pursuant to a Form 1-200 Warrant of Arrest for interior enforcement issued "pursuant to sections 236 [i.e., 8 U.S.C. § 1226] and 287 of the [INA]." Dkt. 12-1 at 5. He has remained in ICE custody ever since and is currently at the Clay County, Indiana, Jail. Dkt. 4 at 3.

On December 19, 2024, Petitioner filed for a Form I-589 Application for Asylum, which remains pending. Dkt. 4 at 2.

On December 31, 2025, Petitioner filed this habeas petition, arguing that his current detention violates the Administrative Procedure Act, procedural due process, and the Immigration and Naturalization Act ("INA"). Dkt. 4 at 10-14. Respondents argue that Petitioner's claim is premature, that he is lawfully detained under the INA pursuant to 8 U.S.C. § 1225(b)(2)(A), and that his continued detention is reasonable. Dkt. 12.

As explained below, the Court finds that Petitioner's detention is unlawful and that he is entitled to an individualized bond hearing or immediate release. Because Petitioner is entitled to habeas corpus relief on these grounds, the Court does not address his other arguments.

## II.   Exhaustion

Respondents argue that Petitioner's claims are premature because he has not sought relief before an Immigration Judge or the Board of Immigration Appeals ("BIA"). Dkt. 12 at 6. Petitioner argues that any attempt to exhaust his administrative remedies would be futile because the BIA has already directly addressed the issue of his statutory qualification for bond in *Matter of Q. Li.* Dkt. 16 at 7.

There is no statutory requirement that Petitioner move for a bond hearing before an immigration judge before seeking habeas relief. In the absence of a statutory mandate, the Seventh Circuit holds that "sound judicial discretion governs" whether courts should require exhaustion. *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004). In similar circumstances, other district courts determined that the petitioner was not required to exhaust

3

administrative remedies by seeking a bond hearing before an immigration judge because doing so would be futile given *Matter of Yajure Hurtado*'s holding. *Valencia v. Noem*, No. 25-CV-12829, 2025 WL 3042520, at *2 (N.D. Ill. Oct. 31, 2025) ("Requiring Petitioner to exhaust his administrative remedies would be futile because Respondents' position is that he is *statutorily precluded* from obtaining the relief he seeks. The Court declines to require exhaustion because [t]here is nothing to indicate the BIA would change its position [once] the BIA has predetermined the statutory issue.") (internal quotes and citations omitted); *see also Ceballos Ortiz v. Olson, et al.*, 2:25-cv-00548-MPB-MJD, dkt. 18 at 2-3, 6-9 (S.D. Ind. Nov. 19, 2025) (finding exhaustion would be futile, proceeding to merits, and ordering that petitioner be provided a bond hearing). The Court finds the reasoning applied in these cases persuasive and concludes that Petitioner was not required to exhaust administrative remedies because doing so would be futile.

### III.  Statutory Basis for Detention

8 U.S.C. §§ 1226 and 1225 govern the detention and removal of aliens.[1] In general, § 1226 applies to aliens "already present in the United States," while § 1225 applies to "certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018).

#### A. Detention Pursuant to § 1226

Section 1226 governs the "usual" removal process, which involves an evidentiary hearing before an Immigration Judge. *Dep't of Homeland Sec. v.*

---

[1] The INA uses the term "alien" to refer to noncitizens, so the Court does too.

*Thuraissigiam*, 591 U.S. 103, 108 (2020). Proceedings are initiated under 8 U.S.C. § 1229(a), also known as "full removal," by filing a Notice to Appear with the Immigration Court. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011).

> Section 1226(a) provides:
>
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States .... [T]he Attorney General—
>
> (1) may continue to detain the arrested alien; and
> (2) may release the alien on—
> (A) bond . . . ; or
> (B) conditional parole . . ..

8 U.S.C. § 1226(a). An immigration officer makes the initial determination to either detain or release the alien. After that initial decision has been made, "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)); *see also* 8 C.F.R. § 1236.1(c)(8), (d)(1). At that hearing, the alien "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019) (citing 8 C.F.R. §§ 1003.19(a), 1236.1(d)); *see also Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) ("[T]he burden is on the non-citizen to 'establish to the satisfaction of the Immigration Judge . . . that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight.'") (citing *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)).

5

### B. Mandatory Detention Pursuant to § 1225

In contrast, § 1225 governs "inspection by immigration officers." Section 1225(b)(1) deals with "inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled" and provides that immigration officers *shall* order certain aliens removed without further hearing or review unless the alien indicates an intention to apply for asylum. 8 U.S.C. § 1225(b)(1)(A)(i). This applies to aliens who have engaged in misrepresentation or have failed to meet document requirements under §§ 1182(a)(6)(C) or 1182(a)(7). *Id.*

Section 1225(b)(2) pertains to "[i]nspection of other aliens." In relevant part, that statute provides that "in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien *shall be* detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). Under § 1225(a)(1), an "applicant for admission" is "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .)." Unless the alien receives temporary parole under § 1182(d)(5)(A), "'there are no other circumstances under which aliens detained under [§] 1225(b) may be released.'" *Rodriguez-Acurio v. Almodovar*, 2025 WL 3314420, at *11 (E.D.N.Y. Nov. 28, 2025) (quoting *Jennings*, 583 U.S. at 300). Accordingly, "[b]oth provisions mandate detention until a certain point and authorize release prior to that point only under limited circumstances." *Id.*

### C. Parole Under § 1182(d)(5)(A)

As explained above, an inadmissible alien who is subject to mandatory detention can be released on humanitarian parole—the Attorney General may "in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). Parole is "not [to] be regarded as an admission of the alien[.]" *Id.* "[W]hen the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.*

Humanitarian parole is automatically terminated "at the expiration of the time for which parole was authorized." 8 C.F.R. § 212.5(e)(1)(ii). Thereafter, the alien "shall be restored to the status that he or she had at the time of parole." §§ 212.5(e)(2)(i). Moreover, "[a]ny further inspection or hearing shall be conducted under section 235 or 240 of the Act and this chapter, or any order of exclusion, deportation, or removal previously entered shall be executed. If the exclusion, deportation, or removal order cannot be executed within a reasonable time, the alien shall again be released on parole unless . . . the public interest requires that the alien be continued in custody." *Id.*

7

## IV. Analysis

Respondents argue that Petitioner is subject to mandatory detention under § 1225(b)(2)(A) because his parole expired. Dkt. 12 at 4.

### A. 8 U.S.C. § 1182(d)(5)(A) and 8 C.F.R. § 212.5(e)(2)(i)

Respondents argue that the expiration of Petitioner's parole subjects him to mandatory detention because after parole terminates, "the alien shall forthwith return or be returned to the custody from which he was paroled." 8 U.S.C. § 1182(d)(5)(A). Respondents do not, however, explain how this provision mandates Petitioner's current detention without bond, considering that Petitioner was not detained when he entered the United States in 2024. Dkt. 12 at 5; dkt. 12-1 at 8.

> Furthermore, "custody," and "detention" are not synonymous:
>
> The law and the statute draw a distinction between "detention" and "custody." "Custody" does not necessarily mean physical custody. It concerns any status under which a person or thing is under "the care and control of [another] for inspection, preservation or security." Black's Law Dictionary 390 (7th ed. 1999). That contrasts with "detention" or "detain," which Congress uses frequently. When "custody" is intended to denote detention, it is preceded by the modifier "physical," or "in." For example, as the Supreme Court has held, an incarcerated person placed on parole is in the "custody" of the parole board, even if he is not subject to its "actual, physical custody." *Jones v. Cunningham*, 371 U.S. 236, 239–40 (1963). "Custody" used alone refers to "restraints on a man's liberty, restraints not shared by the public generally." *Id.*

*Qasemi v. Francis* 2025 WL 3654098, at *10 (S.D.N.Y. Dec. 17, 2025) (interpreting § 1182(d)(5)(A)). Though *Qasemi* is not binding, the Court finds its careful analysis persuasive. While "returning" to custody means that Petitioner must relinquish the freedoms that he had under parole (i.e., lawful status, work

8

authorization, public benefits, etc.), that doesn't mean that he must be detained without bond. Indeed, § 1182(d)(5)(A) does not "affirmatively authoriz[e] detention, much less indefinite detention." *Clark v. Martinez*, 543 U.S. 371, 385 (2005).

Respondents argue that after his parole expired, Petitioner resumed the position that he was in before he was granted parole. Respondents do not, however, cite any language or principle that returns Petitioner to his physical position at the port of entry in California in 2024. "A noncitizen is not reverted by operation of law to status as an arriving alien—they remain a noncitizen living in the United States who used to be paroled and must be treated by the INA accordingly." *Qasemi*, 2025 WL 3654098, at *10 (S.D.N.Y. Dec. 17, 2025).

And the next part of the sentence in statute states that the alien "shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). So, after parole expires, the alien is treated like any other unadmitted alien under the INA. *See Clark*, 543 U.S. at 386 (interpreting 1182(d)(5)(A) to subject the alien, who was subject to a final order of removal, to "[t]he manner in which the case of any other applicant would be 'dealt with' beyond the 90–day removal period is prescribed by § 1231(a)(6), which we interpreted in *Zadvydas* and have interpreted above.").

8 C.F.R. §§ 212.5(e)(2)(i), cited by Respondents, does not alter this analysis. This regulation provides that upon expiration of humanitarian parole under Section 1182(d)(5)(A), the alien "shall be restored to the *status* that he or

9

she had at the time of parole" and that "[a]ny further inspection or hearing [following expiration of parole] shall be conducted under section 235 or 240." 8 C.F.R. § 212.5(e)(1)–(2) (emphasis added). Once again, the first part of the sentence does not state that return to "custody" upon expiration of parole equates to mandatory detention. The second part of the sentence "appears to provide for either inspection under section 235 (which can then lead to either expedited or regular removal proceedings) or, if the parolee does not require any 'further inspection,' to section 240 proceedings." *Coalition For Humane Immigrant Rights v. Noem et al.*, 2025 WL 2192986, at *26 (D.D.C. Aug. 1, 2025). Respondents focus on the restoration of "status" while ignoring the next part of the provision providing that parolees will be dealt with either under Section 235 [8 U.S.C. § 1225] or Section 240 [8 U.S.C. § 1299a], or what are otherwise known as "full removal proceedings." Indeed, Petitioner's Notice to Appear explicitly places him in full removal proceedings under "Section 240" of the INA. *See* dkt. 12-1 at 8.

In sum, while the expiration of Petitioner's parole returned him to the "custody" of DHS, that does not subject him to mandatory detention. Because he was paroled and is not an arriving alien, Section 1182 requires that Petitioner be treated just as any noncitizen previously granted parole and living in the United States. This conclusion is well supported by the weight of authority. *Qasemi*, 2025 WL 3654098, at *11 (collecting cases). The next question is whether Petitioner is subject to § 1225(b)(2)(A) or § 1226(a).

### B. Section 1225(b)(2)(A)

While Respondents argue that Petitioner reverted back to "arriving" status when his parole expired, they do not connect this to the specific text of § 1225(b)(2)(A) or to the statutory framework. Even assuming that the other statutory criteria are met, Respondents do not explain how Petitioner is "seeking admission" into the United States. "Seeking admission" cannot be read as synonymous with "applicant for admission" without violating the rule against surplusage. *See United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) ("[E]very clause and word of a statute should have meaning."). "If an interpretation of one provision 'would render another provision superfluous, courts presume that interpretation is incorrect.'" *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025) (quoting *Bilski v. Kappos*, 561 U.S. 593, 607–08, 130 (2010)); *see also id.* (disagreeing with the construction of § 1225(b)(2)(A) that interprets "applicant for admission" as synonymous with "seeking admission" because, in addition to violating the rule against surplusage, "it is Congress's prerogative to define a term however it wishes, and it has chosen to limit the definition of an 'applicant for admission' to 'an alien present in the United States who has not been admitted or who arrives in the United States.' 8 U.S.C. § 1225(a)(1). It could easily have included noncitizens who are 'seeking admission' within the definition but elected not to do so.").

The Department of Homeland Security's implementing regulations generally treat "arriving alien" and "seeking admission" as interchangeable. *See,*

11

*e.g., Tumba v. Francis*, 2025 WL 3079014, at *4 (S.D.N.Y. Nov. 4, 2025). Thus, if Petitioner is an "arriving alien," as Respondents contend, then he is also "seeking admission." Even still, as seen above, § 1182(d)(5)(A) and its regulations removed Petitioner's legal status after his humanitarian parole expired, they did not necessarily return him to the position of an "arriving alien" at a port of entry. Therefore, "Petitioner shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). Moreover, within the context of § 1225(b)(2)(A), Petitioner cannot be said to be "arriving" or "seeking admission" after having been inspected at the border in 2024, paroled, and then residing within the United States ever since.

"Arriving" and "seeking admission" are not defined within the statute, so the Court utilizes the plain meaning of those terms. *See Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 85 (2018). Addressing the same statutory provisions, the court in *Coalition for Humane Immigrant Rights v. Noem* explained that "'[a]rrive' means 'to reach a destination' or 'to make an appearance.'" 2025 WL 2192986 at *28 (quoting *Arrive*, Merriam Webster's Collegiate Dictionary (1996)). The gerund tense "arriv*ing*" connotes process or actively working towards reaching a destination. Thus, an alien "arriving" in the United States is in the "process of reaching his or her destination (the United States) and making an appearance here." *Id.* It does not make sense to interpret "arriving alien" as applying to Petitioner, "who previously reached the United States via a port of entry, underwent inspection at that port of entry, and then was paroled into the United States (beyond their original destination) for an indefinite period of time."

12

*Id.*; *see Rodriguez-Acurio*, 2025 WL 3314420, at *20 ("The words 'arriving,' 'arrival,' and 'arrive' in Section 1225 appear to refer to a process that occurs upon physical entry into the United States, 'not an interminable . . . status' that attaches to a noncitizen upon arrival.") (internal citation omitted).

While Petitioner does not contest that he was an "arriving alien" when he arrived on July 2, 2024, dkt. 12-1, that designation no longer applies. And Petitioner was arrested pursuant to a warrant that explicitly relies on § 1226. *See* dkt. 12-1 at 5. The text of § 1226 authorizes the arrest and detention of aliens with a warrant while § 1225 does not contain any language about warrants. *See Campos Leon v. Forestal*, No. 1:25-CV-01774-SEB-MJD, 2025 WL 2694763, at *3 (S.D. Ind. Sept. 22, 2025) ("It is difficult to find that § 1226(a) carries any meaning if the aliens it expressly addresses—those arrested and detained pursuant to warrants—are not actually subject to its provisions.").

Next, Petitioner is not "seeking admission" into the United States.  Like "arriving," "seeking admission" is written in present-tense active language. *See United States v. Wilson*, 503 U.S. 329, 333 (1992) ("Congress' use of a verb tense is significant in construing statutes.").  As other courts have explained, "'seeking' means 'asking for' or 'trying to acquire or gain' and implies some kind of affirmative action on the part of the applicant." *Alejandro v. Olson*, 2025 WL 2896348, at *7 (S.D. Ind. Oct. 11, 2025); *see also Beltran Barrera v. Tindall*, No. 3:25-cv-541-RGJ, 2025 WL 2690565, at *4 (W.D. Ky. Sept. 19, 2025) (rejecting the respondents' interpretation of section 1225(b)(2) to cover all aliens who are present without being admitted because "[t]he term 'seeking' 'implies action'" and

13

"those who have been present in the country for years are not actively 'seeking admission.'"); *Rusu v. Noem*, 2025 WL 3240911, at *5 (N.D. Ill. Nov. 20, 2025) ("Noncitizens who are just 'present' in the country—who have been here for years and never proceeded to obtain any form of citizenship (e.g. asylum, permanent residency, refugee status, visas, etc.)—are not 'seeking' admission.").

Petitioner here is plainly not "seeking admission." He has already been inspected at a port of entry and granted parole, which has now expired. Aliens such as Petitioner are "seeking to remain in the United States" not seeking admission. *Alejandro*, 2025 WL 2896348, at *7 ("[Petitioner] is not actively 'seeking' 'lawful entry' because he entered the United States over 20 years ago."). The fact that Petitioner does not fit into the third criterion, "seeking admission," or its correlate "arriving alien," supports the conclusion that § 1225(b)(2) does not apply to him.

Furthermore, application of § 1225(b)(2) to Petitioner does not make sense when § 1225 is considered in its entirety. *See Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989) (It is a "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."); *see also King v. Burwell*, 576 U.S. 473, 486 (2015) (Our duty, after all, is "to construe statutes, not isolated provisions.") (internal quotation omitted). Section 1225 is titled: "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing," and it repeatedly refers to "inspection" throughout. Regulations for "Inspection of Persons Applying for Admission" characterize inspection as occurring at or

14

near the U.S.-Mexico or U.S.-Canada border or a port of entry, such as an airport. *See* 8 C.F.R. § 235.1(f) *et seq* (referring to aliens seeking admission at a "port-of-entry;" inspecting aliens who have been "brought to the United States . . . after having been interdicted in international or United States waters;" and repeatedly referring to "land border port-of-entry" throughout). Meanwhile, "[n]o inspection or screening takes place for a noncitizen residing in the United States who is subsequently detained because his or her parole has expired." *Walizada v. Trump*, 2025 WL 3551972, at *11 (D. Vt. Dec. 11, 2025). Thus, § 1225(b) applies to "individuals who are seeking entry into the United States, not people living here." *Id.*

Faced with similar facts, numerous courts have found that individuals whose humanitarian parole has expired are not subject to mandatory detention under § 1225(b)(2). *See Z.G. v. Olson, et al.*, No. 2:25-cv-00584-MPB-MKK, at dkt. 23 (S.D. Ind. Jan. 9, 2026); *Qasemi*, 2025 WL 3654098, at *1; *Walizada*, 2025 WL 3551972, at *1; *Rodriguez-Acurio*, 2025 WL 3314420, at *1; *Mohammadi v. Larose*, 2025 WL 3731737, at *4 (S.D. Cal. Dec. 26, 2025). This Court finds the reasoning in these cases persuasive and finds that § 1225(b)(2) does not apply to Petitioner.

### C. § 1226(a)

Section 1226 pertains to the "[a]pprehension and detention of aliens," and it authorizes the Attorney General to issue a warrant to arrest and detain an alien during removal proceedings. Federal regulations provide that aliens detained under § 1226(a) receive bond hearings. *See* 8 C.F.R. § 236.1(d)(1)); *see*

15

*also* 8 C.F.R. § 1236.1(c)(8). The plain language suggests that § 1226—not § 1225—applies to Petitioner because he is an "alien," who was "apprehended" and "detained."

Respondents alternatively argue that Petitioner is lawfully detained under § 1226 because he has an opportunity to receive a bond hearing before an Immigration Judge. Dkt. 12 at 12-13. Thus, this Court cannot review the Immigration Judge's decision due to § 1226(e), which states:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

*Id.* (quoting 8 U.S.C. § 1226(e)).

There is no evidence, however, that Petitioner has an opportunity to receive a bond hearing where the Immigration Judge would make an individualized determination of his custody pursuant to 8 C.F.R. § 236.1(d)(1). As discussed above, under BIA precedent, an Immigration Judge does not have jurisdiction to consider bond on the merits. Furthermore, Respondents do not cite any binding precedent applying § 1226(e) to a habeas petition seeking a bond hearing pursuant to § 1226(a). *Demore v. Kim*, 583 U.S. 510 (2003), cited by Respondents, held that § 1226(e) did *not* deprive courts of habeas jurisdiction over a challenge to detention under § 1226(c) because the petitioner did not challenge a discretionary judgment or a decision, but the statutory framework permitting his detention without bail. 530 U.S. at 516–17.

16

In sum, Petitioner's detention without an opportunity for an Immigration Judge to consider the individual facts and circumstances of Petitioner's eligibility for bond pursuant to § 1226(a) violates the INA. Petitioner is thus entitled to habeas relief because his continued detention violates "the laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

## V.     Scope of Relief

The remaining question is the remedy, which should be "appropriate to the violation." *Waller v. Georgia*, 467 U.S. 39, 50 (1984).  Petitioner requests immediate release from custody.  Dkt. 1 at 14.  Immediate release is the customary remedy in habeas proceedings. *See Thursaissigiam*, 591 U.S. at 107 ("Habeas has traditionally been a means to secure release from unlawful detention."); *Munaf v. Geren*, 553 U.S. 674, 698 (2008) (explaining that "the quintessential habeas remedy" is release from custody).  However, the Court finds that it would not be in the interests of justice to order Petitioner's immediate release and instead orders Respondents to provide him an individualized bond hearing as required by § 1226(a).

## VI.     Conclusion

The Court **grants** the petition to the extent that **no later than 5:00 p.m. on January 15, 2026, Respondents must either**: (1) provide Petitioner with an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a); or (2) release him from custody, under reasonable conditions of supervision. No later than **5:00 p.m. on January 17, 2026,** Respondents must

file a notice with the Court certifying that they have complied with the Court's order. The **clerk is directed** to enter final judgment.

M- H- J-'s unopposed motion to proceed under a pseudonym, dkt. [5], is **granted**. [2]

**SO ORDERED.**

Date: 1/12/2026

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All ECF-Registered Counsel of Record

---

[2] Federal courts maintain a "strong presumption that adult litigants must use their own names." *Doe v. K.J.*, 2025 WL 2755815, at *1 (7th Cir. Sept. 29, 2025). However, the Seventh Circuit has permitted litigants to proceed pseudonymously to limit exposure to retaliatory violence and "to protect the privacy of children, rape victims, and other particularly vulnerable parties or witnesses." *Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869, 872 (7th Cir. 1997); *see also P.A.-V. v. Bondi*, 148 F.4th 511, 515 (7th Cir. 2025) (granting motion to proceed under pseudonym "out of an abundance of caution" because movant's "fear of retaliatory acts of violence . . . renders anonymous litigation prudent" and "the potential harm from disclosure outweighs any potential harm of concealing P.A.-V.'s full name"); *E.F.L. v. Prim*, 986 F.3d 959, 961 (7th Cir. 2021) ("Because of E.F.L.'s allegations of domestic abuse and her fear of retaliation, this court granted her motion to use a pseudonym while pursuing this appeal.").M- H- J-'s unopposed representations that he faces persecution due to his religious and ethnic identity justify application of the exception in this case.